UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DEANA OWENS,

    Plaintiff,

v.                                    Case No. 8:18-cv-1078-T-AEP

ANDREW M. SAUL,
Commissioner of Social Security,[1]

    Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of her claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.    Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 223-35). The Commissioner denied Plaintiff's claims both initially and upon reconsideration (Tr. 149-54). Plaintiff then requested an administrative hearing (Tr. 169). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 54-81). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 10-20). Subsequently, Plaintiff requested review from the

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul should be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act. 42 U.S.C. § 405(g).

Appeals Council, which the Appeals Council denied (Tr. 1). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1965, claimed disability beginning March 1, 2013 (Tr. 12, 18). Plaintiff obtained a limited seventh grade education (Tr. 250-52). Plaintiff has no past relevant work (Tr. 18). Plaintiff alleged disability due to blind right eye-retinal detachment, COPD/chronic bronchitis, major depression/adjustment disorder, hypertension/high cholesterol, bilateral wrists and knee problems, lower back problems, pain, memory loss, and wheezing in chest (Tr. 251, 298).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through September 30, 2013 and had not engaged in substantial gainful activity since March 1, 2013, the alleged onset date (Tr. 12). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: blind right eye, chronic obstructive pulmonary disease, depression, and history of substance abuse. *Id.* Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 13). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work except that the claimant can occasionally climb ladders, ropes and scaffolds and frequently climb ramps and stairs; has frequent near acuity, far acuity, depth perception, accommodation, color vision and field of vision; the claimant must avoid even moderate exposure to irritants such as fumes, odors, dust, gases and hazards; the claimant can perform unskilled work at SVP 1 or SVP 2 levels; and she can perform simple, routine, repetitive tasks and have occasional

public contact and occasional changes in a work setting (Tr. 14). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 15).

Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as a garment sorter, laundry folder, and small parts assembler (Tr. 19). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled. *Id.*

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, in order to regularize the adjudicative process, promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review,

further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a), 416.920(a). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g), 416.920(g).

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938) (internal quotation marks omitted)); *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citations omitted).

In reviewing the Commissioner's decision, the court may not re-weigh the evidence or substitute its own judgment for that of the ALJ even if it finds that the evidence preponderates against the ALJ's decision. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient

reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Keeton*, 21 F.3d at 1066. The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

**III.**

Plaintiff bears the burden of proving disability within the meaning of the SSA, and of producing evidence supporting such a claim. *See* 20 C.F.R. §§ 404.1512(a), (b), (c), 416.912(a), (b), (c); *Doughty v. Apfel*, 245 F. 3d 1274, 1278 (11th Cir. 2001); *Ellison v. Barnhart*, 355 F. 3d 1272, 1276 (11th Cir. 2003). While *pro se* briefs are liberally construed, *pro se* plaintiffs nevertheless remain subject to the relevant laws and rules in these proceedings. *Tannenbaum v. United States*, 148 F. 3d 1262, 1263 (11th Cir. 1998); *Moon v. Newsome*, 863 F. 2d 835, 837 (11th Cir. 1989). The Commissioner aptly contends that the Plaintiff's brief only contains unclear, cursory, and unsupported statements that do not plainly or prominently raise an issue or claim.[2] Throughout most of the Plaintiff's brief, the Plaintiff simply notes "I do not agree with," a repeated statement pertaining to copy pasted paragraphs of the ALJ's opinion. *See* Plaintiff's Supplement, at 1-6 ("Pl's Br."). These allegations are not supported by any regulations, statutes, caselaw, citations to the record, or supporting arguments. As such, the Plaintiff waived any intended arguments contained in the brief and any issues not raised in the brief. See *Timson v. Sampson*, 518 F. 3d 870, 874 (11th Cir. 2008) (holding that, while *pro se*

---

[2] Plaintiff failed to follow the Court's Scheduling Order (Doc. 14), namely, to identify and frame, in a neutral fashion, each of the disputed issues that Plaintiff raises as the grounds for reversal and remand (Doc. 18). Indeed, the Plaintiff solely claimed that she "disputes the Judges ruling." *Id.* Upon being directed to comply with the Scheduling Order (Doc. 19), the Plaintiff submitted a Plaintiff's Supplement (Doc. 20). The Commissioner then complied with the Court's directive to respond to the Supplement (Doc. 22).

briefs are liberally construed, "issues not briefed on appeal by a pro se litigant are deemed abandoned"); *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F. 3d 678, 681 (11th Cir. 2014) (holding that a "party fails to adequately 'brief' a claim when he does not 'plainly and prominently' raise it"); *Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 n.1 (11th Cir. 2013) (noting that the claimant waived arguments by not expressly challenging the ALJ's findings); *N.L.R.B. v. McClain of Georgia, Inc.*, 138 F. 3d 1418, 1422 (11th Cir. 1998) (noting that "[i]ssues raised in a perfunctory manner, without supporting arguments and no citation to authorities, are generally deemed to be waived.") Notwithstanding this, the Commissioner submitted a detailed brief establishing that the ALJ's opinion is properly supported by substantial evidence. An ALJ's decision must be affirmed when the decision is supported by substantial evidence in the record as a whole. *See Martin v. Sullivan*, 894 F. 2d 1520, 1529 (11th Cir. 1990); *Baker o/b/o Baker v. Sullivan*, 880 F. 2d 319, 321 (11th Cir. 1989).[3]

**A. RFC**

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all of the other evidence of record and will consider all of the medically determinable impairments, including impairments

---

[3] The following discussion is based on both the Commissioner's response to Plaintiff's Supplement (Doc. 22), and the Court's review of the administrative record.

are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. SSR 96-8p, 1996 WL 374184, at *5; 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii), 404.1545(a)(3), 416.929(c)(3)(i)-(vii), 416.945(a)(3).

"Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Further, "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8P, 1996 WL 374184, at *1 (S.S.A. July 2, 1996). According to the ruling, "[i]n assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Id.* at *5. Therefore, in denying disability benefits, the evidence must show that the claimant can perform work on a regular and continuing basis.

### a. Medical Opinions

When assessing the medical evidence, the ALJ must state with particularity the weight afforded to different medical opinions and the reasons therefor. *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (citation omitted). The Social Security regulations provide guidelines for the ALJ to employ when evaluating medical opinion evidence. *See* 20 C.F.R. §§ 404.1527, 416.927. In determining the weight to afford a medical opinion, the ALJ considers a variety of factors including but not limited to the examining relationship, the treatment relationship, whether an opinion is well-supported, whether an opinion is consistent with the record as a whole, and the area of the doctor's specialization. 20 C.F.R. §§ 404.1527(c), 416.927(c). For instance, the more a medical source presents evidence to support an opinion, such as medical signs and laboratory findings, the more weight that medical opinion will receive. 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, the more consistent the medical opinion is with the record as a whole, the more weight that opinion will receive. 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4).

Typically, the ALJ must afford the testimony of a treating physician substantial or considerable weight unless "good cause" is shown to the contrary. Such a preference is given to treating sources because such sources are likely to be best situated to provide a detailed and longitudinal picture of the medical impairments. *Lewis*, 125 F.3d at 1440. Furthermore, the ALJ must specify the weight given to the treating physician's opinion or reasons for giving the opinion no weight, and the failure to do so is reversible error. *MacGregor*, 786 F.2d at 1053. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (citation omitted). Good cause exists where: (1) the treating physician's opinion was not bolstered by the evidence; (2) the evidence supported a contrary finding; or (3) the treating physician's opinion was conclusory or inconsistent with the physician's own medical records. *Phillips v.*

*Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004). In fact, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). A claimant's RFC is, ultimately, "a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive"). *Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012).

State agency medical consultants are considered experts in the Social Security disability evaluation process. 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i). The weight given to the opinion of a state agency medical consultant depends on whether the opinion is supported by and consistent with the record as a whole. SSR 96-6p. In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources. SSR 96-6p, 1996 WL 374180, at *2-3 (S.S.A. July 2, 1996). Even if the state agency medical consultant cannot review all of the claimant's medical records before rendering an opinion or offering an RFC assessment, the ALJ has access to the entire record, including the claimant's testimony, and can determine whether the opinion is supported by and consistent with the evidence of record and thus whether to afford the opinion great weight. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (finding that an ALJ did not afford undue weight to a non-examining doctor where the doctor cited several portions of the record in support of her conclusions, and the ALJ, who makes the ultimate determination, had access to the entire record, including the claimant's testimony).

The ALJ properly considered the medical opinions and his formulation of the RFC is supported by substantial evidence. Here, the ALJ concluded that Plaintiff retained a residual functional capacity ("RFC") to perform light work except that the claimant can occasionally climb ladders, ropes and scaffolds and frequently climb ramps and stairs; has frequent near

acuity, far acuity, depth perception, accommodation, color vision and field of vision; the claimant must avoid even moderate exposure to irritants such as fumes, odors, dust, gases and hazards; the claimant can perform unskilled work at SVP 1 or SVP 2 levels; and she can perform simple, routine, repetitive tasks and have occasional public contact and occasional changes in a work setting (Tr. 14). In concluding that the Plaintiff can perform a limited level of light work, the ALJ noted that he gave every benefit of the doubt to the Plaintiff (Tr. 18). For instance, the ALJ applied the correct legal standard in considering and evaluating the opinion of State agency consultant Dr. Thomas Bixler, M.D. (Tr. 18, 123-25, 137-40). The ALJ gave good cause for assigning little weight to Dr. Bixler's opinion, as he found it inconsistent with the evidence from the record (Tr. 18, 123-25, 137-40). In May 2015, Dr. Bixler opined, in pertinent part, that Plaintiff was able to perform a limited range of medium work (Tr. 123-25, 137-40). The ALJ explained that he gave little weight to Dr. Bixler's opinion that Plaintiff could perform a limited level of medium work as inconsistent with additional evidence received into the record and testimony at the hearing (Tr. 18). The ALJ stated he considered opinion evidence in accordance with the requirements of 20 C.F.R. §§ 404.1527, 416.927. The ALJ found that Plaintiff could perform instead a limited level of light work (Tr. 14-18). Substantial evidence supports these findings. For instance, in August 2016, the ALJ noted Plaintiff had no sensory abnormalities, her motor strength, gait, and stance were normal, and she had no pulmonary or neurological symptoms (Tr. 16, 775-76). A March 2016 chest imaging report showed no acute cardiopulmonary disease (Tr. 817). During late 2015 and 2016, Plaintiff had normal motor strength, gait, stance, and sensation (Tr. 776, 781, 794, 801, 811). These exam notes support the ALJ's decision to give little weight to Dr. Bixler's assessment.

Then, the ALJ gave great weight to the opinion of Dr. Charles Lebowitz, M.D., as consistent with the longitudinal treatment record (Tr. 17, 725-35). In January 2015, Dr.

Lebowitz performed a consultative examination and diagnosed Plaintiff with chronic obstructive pulmonary disease (Tr. 725-35). As the ALJ noted, Dr. Lebowitz explained that Plaintiff was still abusing tobacco, she had clear lungs but reduced air movement, her pulmonary function test showed reduced parameters with no improvement postbronchodilator therapy, and although she complained of dyspnea on exertion at about ½ blocks, her ability to walk in the office was within normal limits (Tr. 17, 729). Dr. Lebowitz diagnosed Plaintiff with right eye blindness, hypertension (on medications), hyperlipidemia (on diet therapy and statin), long history of drug abuse, smoker with tobacco dependency, and depression (on selective serotonin reuptake inhibitor) (Tr. 17, 729). At her January 2015 consultative exam, the ALJ noted, Plaintiff had normal cranial nerves, motor, sensory, and cerebellar functions (Tr. 17, 728). Plaintiff was able to walk without impairment (Tr. 728). The ALJ noted Plaintiff's normal grip, digital dexterity, and full range of motion of all joints (Tr. 17, 728). In addition, the ALJ noted, Plaintiff had no behavioral abnormalities (Tr. 17, 728). The ALJ noted that Dr. Lebowitz's opinion is supported by and consistent with the overall treatment record (Tr. 17, 725-35).

Further, the ALJ also considered the opinion of the psychological consultative examiner Dr. Cecilia Yocum, Ph.D., in evaluating the severity of Plaintiff's mental impairments and in determining Plaintiff's RFC (Tr. 17, 737-40). In January 2015, Dr. Yocum performed a psychological examination of Plaintiff (Tr. 17, 737-40). Dr. Yocum diagnosed Plaintiff with major depressive disorder, severe, without psychotic features and post-traumatic stress disorder (Tr. 739). Dr. Yocum opined Plaintiff's mood was very dysthymic, with restricted affect (Tr. 738). Dr. Yocum noted Plaintiff's slow psychomotor behavior, her immediate memory was "just a little low", and she could recall 2 out of 3 objects after a period of 5 minutes (Tr. 739). Dr. Yocum noted Plaintiff's limited concentration, and her judgment into hypothetical social

situations was a "little low" (Tr. 739). The ALJ assigned only some weight to Dr. Yocum's opinions after noting that they are somewhat vague, that at the time of the examination the Plaintiff was neither on Zoloft nor on Vistaril, and her opinions were inconsistent with the mental status findings and Plaintiff's reported activities of daily living (Tr. 17, 699, 739). For instance, Plaintiff's affect, appearance, and behavior were normal; she had no hostility or irritability; she had normal speech and was able to recall 3/3 words; she denied any thoughts of homicide or suicide; and she was fully oriented to time, place, and person (Tr. 699).

Further, the ALJ noted that the Plaintiff is able to independently perform several daily living activities, such as buying groceries, shopping in stores, going out alone, taking care of her pet, managing her personal care, washing dishes, and doing some level of laundering and preparing small meals; has no difficulty getting along with family, friends, neighbors, and authority figures; and can pay bills, count change, handle a savings account, and use a checkbook or money order (Tr. 13-15, 18). And, although the Plaintiff presented to Northside Mental Health Center in November 2014 for depressive symptoms, on exam she had average intelligence, good recall of recent events, average frequency of thought, good reality testing, coherent thought process, and positive thought content (Tr. 713, 715). The RFC finding properly accommodated the mental impairment limitations that Plaintiff experienced by limiting her to simple, routine, repetitive tasks, occasional contact public contact, and occasional changes in a work setting (Tr. 14-18). Notably, no treating or examining doctor imposed limitations greater than those reflected by the RFC on the Plaintiff's ability to perform work (Tr. 14-19). Overall, the ALJ properly noted that the Plaintiff's physical examinations were fairly unremarkable, mental health treatment had been sparse, and her symptoms do not significantly affect her daily activities (Tr. 18). Accordingly, the ALJ's decision is supported by substantial evidence.

### B. VE

At step five, the Commissioner must consider the assessment of the RFC combined with the claimant's age, education, and work experience to determine whether the claimant can make an adjustment to other work. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make an adjustment to other work, a finding of not disabled is warranted. *Phillips*, 357 F.3d at 1239. Conversely, if the claimant cannot make an adjustment to other work, a finding of disabled is warranted. *Id.* At this step, the burden temporarily shifts to the Commissioner to show other jobs exist in significant numbers in the national economy which, given the claimant's impairments, the claimant can perform. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). "The ALJ must articulate specific jobs that the claimant is able to perform, and this finding must be supported by substantial evidence, not mere intuition or conjecture." *Wilson*, 284 F.3d at 1227 (citation omitted).

There are two avenues by which an ALJ may determine a claimant's ability to adjust to other work in the national economy; namely, by applying the Medical Vocational Guidelines ("Grids") or by the use of a VE. *Phillips*, 357 F.3d at 1239-40. Typically, where the claimant cannot perform a full range of work at a given level of exertion or where the claimant has non-exertional impairments that significantly limit basic work skills, the preferred method of demonstrating the claimant can perform other jobs is through the testimony of a VE. *Jones*, 190 F.3d at 1229. Indeed, exclusive reliance on the Grids is not appropriate under either of those circumstances. *Phillips*, 357 F.3d at 1242. For a VE's testimony to constitute substantial evidence, however, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments. *Wilson*, 284 F.3d at 1227. Further, "SSR 00-4p imposes a duty on ALJs to identify and resolve apparent conflicts between DOT data and VE testimony, and this

duty is not fulfilled simply by taking the VE at his word that his testimony comports with the DOT when the record reveals an apparent conflict between the VE's testimony and the DOT". *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1362 (11th Cir. 2018). If the ALJ fails to fulfill this duty, the decision is not supported by substantial evidence. *Id.*

Here, the ALJ properly found that the Plaintiff is able to perform work available in significant numbers in the national economy (Tr. 19). The ALJ asked the VE a series of hypothetical questions that was consistent with Plaintiff's age, education, and work experience, included all the limitations in the RFC finding, and excluded limitations that he rejected as unsupported (Tr. 76-77). The ALJ, relying on VE testimony in response to a complete hypothetical question, properly found that the limitations in Plaintiff's RFC did not significantly limit her basic work skills in performing the unskilled jobs that the VE identified and that Plaintiff was not disabled because she could perform other work (Tr. 19). Specifically, the VE identified three jobs available in significant numbers in the national economy that the Plaintiff could perform: a garment sorter, laundry folder, and small parts assembler. *Id.* The VE testified that there were approximately 80,000 garment sorter jobs, 75,000 laundry folder jobs, and 175,000 small parts assembler jobs available in the national economy for the Plaintiff to perform (Tr. 19). Because the VE testified that an individual with all of the functional limitations included in Plaintiff's RFC could perform other work, the VE's testimony constituted substantial evidence that Plaintiff was not disabled during the relevant period. The ALJ also found the VE's testimony to be consistent with the DOT, except that the VE felt that the job of a laundry folder takes place in a dry dock station, instead of being surrounded by constant wetness or humidity (Tr. 19). Given that the ALJ identified work available in significant numbers in the national economy that the Plaintiff can perform, the Court finds that there is substantial evidence to support the ALJ's finding of not disabled.

### C. Additional Evidence

Finally, remand is also not warranted based on the additional evidence that the Plaintiff submitted to the Court (Doc. 1). Evidence submitted to the district court may be considered only to determine if remand is warranted under sentence six of 42 U.S.C. § 405(g). *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1267-68 (11th Cir. 2007); *Caulder v. Bowen*, 791 F.2d 872, 876 (11th Cir. 1986); *Cherry v. Heckler*, 760 F.2d 1186, 1192 (11th Cir. 1985). To satisfy the criteria for a remand under sentence six of 42 U.S.C. § 405(g), a claimant must establish that: (1) the evidence is new and noncumulative; (2) the evidence is material such that a reasonable probability exists that it would change the administrative result; *and* (3) there was good cause for the failure to submit the evidence at the administrative level. *See Caulder*, 791 F.2d at 877; *Cherry*, 760 F.2d at 1192.

Here, the evidence consists of the following: March 2018 treatment notes, an undated prison report with reading, language, and math test results, and a Work Release Placement Decision dated August 22, 2013 (Doc. 1). As the Commissioner established, the Plaintiff failed to meet the criteria. Evidence is material if a reasonable probability exists that the evidence would change the administrative result. *See* Caulder, 791 F.2d at 877; Cherry, 760 F.2d at 1192. Plaintiff failed to show that the March 2018 treatment notes, *dated nine months after the ALJ issued its decision*, were chronologically relevant to the period considered by the ALJ. The issue in a disability case is whether a claimant was "entitled to benefits during a specific period of time, which was necessarily prior to the date of the ALJ's decision." *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999).

Further, the medical records indicate Plaintiff's diagnoses of cervical disc degeneration, enlarged lymph nodes, abnormal vaginal bleeding, and low back pain (Doc. 1). The mere existence of a diagnosis does not establish that the condition caused work-related limitations.

*See Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005); *Davis v. Barnhart*, 153 F. App'x 569, 572 (11th Cir. 2005). Plaintiff failed to show these diagnoses, *even if* she had them on or before July 2017, affected her ability to work beyond what the ALJ accounted for in the RFC (Tr. 14-18). As the Commissioner aptly notes, these treatment notes could not reasonably have been expected to change the ALJ's decision that Plaintiff had not been under a disability from March 1, 2013, through the date of the ALJ's decision of July 11, 2017. In addition, the remaining evidence is also immaterial as it would not have altered the ALJ's decision (Doc. 1). *See Caulder*, 791 F.2d at 877; *Cherry*, 760 F.2d at 1192. Ultimately, the Plaintiff failed to show that the evidence submitted was new, material, and had good cause for failing to submit this evidence before the ALJ issued his decision. Accordingly, for the foregoing reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

## IV.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is affirmed.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 26th day of August, 2019.

_____
ANTHONY E. PORCELLI
United States Magistrate Judge

16

cc: Counsel of Record